USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-15-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
IAN MITCHELL, GORDON CLARK and      :   10 Civ. 8173 (LAP)
PAT MCGLYNN,                        :
                                    :
            Plaintiffs,             :   MEMORANDUM & ORDER
                                    :
        -against-                   :
                                    :
ERIC FAULKNER, DUNCAN FAURE,        :
ALAN LONGMUIR, DEREK LONGMUIR,      :
LESLIE MCKEOWN, STUART WOOD and     :
ARISTA RECORDS LLC,                 :
                                    :
            Defendants.             :
------------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

   Ian Mitchell, Gordon Clark, and Pat McGlynn ("Plaintiffs") bring this action against Defendants Eric Faulkner, Duncan Faure, Alan Longmuir, Derek Longmuir, Leslie McKeown, and Stewart Wood (the "Rollers"), formerly the band "The Bay City Rollers", who in turn are plaintiffs in a previously filed separate action against Defendant Arista Records LLC ("Arista") for royalties. (07-cv-2318). Plaintiffs, each of whom at one time performed with the band, assert the right to declaratory relief claiming anticipatory breach of contract and unjust enrichment against the Rollers, alleging a right to a proportionate share of any royalties paid in the future to the Rollers by Arista.[1] The Rollers have filed

---

[1] The Complaint had also included a claim for accounting, (continued)

this motion to dismiss the Complaint ("Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that that statute of limitations for each claim has expired and, alternatively, that the statute of frauds bars the claims.[2]  For the reasons set forth herein, the motion to dismiss [dkt. no. 24] is GRANTED.

## BACKGROUND

The Court takes as true the following factual allegations in the Complaint and draws all reasonable inferences in favor of Plaintiff.  See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

### I.   The Bay City Rollers

The Bay City Rollers (originally called "The Saxons") were a musical group formed in 1967 with original members Alan Longmuir, Derek Longmuir, Gordon Clark ("Clark"), and others. (Complaint filed October 28, 2011 [dkt. no. 1] ("Compl.") ¶ 15; Memorandum of Law in Support of the Bay City Rollers' Motion to Dismiss the Complaint, April 3, 2012 [dkt. no. 25] ("Def. Memo") at 2.)  The band became successful in 1971 and entered into a recording contract with Bell Records (the "Bell Agreement"),

---

(continued)
which was subsequently withdrawn.  (Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss, April 17, 2012 [dkt. no. 27] ("Pl. Opp.") at 6 n.2.)
[2]   Defendant Arista filed an Answer and Affirmative Defenses to the Complaint on January 20, 2012 [dkt. no. 12].

which was signed by Plaintiff Clark and others.  (Compl. ¶ 17; Def. Memo at 3.)  The Bell Agreement exchanged the rights to all master recordings and related derivatives and performances for the rights to receive various royalty payments for records sold by Bell Records.  (Compl. ¶ 18.)

Between the time of the signing of the Bell Agreement and 1975, the band went through several personnel changes. Clark separated from the band in 1973; Plaintiffs Ian Mitchell ("Mitchell") and Pat McGlynn ("McGlynn") performed as musicians on recordings and live performances during that time.  (Compl. ¶¶ 21, 22; Def. Memo at 3 n.1.)  In 1975, the band, through an entity created called ALK Enterprises, Inc., entered into a royalties agreement with Arista (the "1975 Agreement") as the intended third-party beneficiaries.  (Compl. ¶ 24; Def. Memo at 3.)  Under the 1975 Agreement, all records and reproductions made by the band were to be property of Arista in exchange for royalties from Arista's sales of all recordings.  (Compl. ¶ 24; Def. Memo at 3.)  The 1975 Agreement also held that royalties for records subject to the Bell Agreement sold subsequent to 1975 were to be paid through the 1975 Agreement.[3]  (Compl. ¶ 24.) None of the Plaintiffs was a signatory to the 1975 Agreement. (Def. Memo at 3.)  The 1975 Agreement requires that "[t]he

---

[3]   Bell Records was reorganized into Arista Records between 1974 and 1976.  (Def. Memo at 12 n.11.)

3

substitution of any individual or individuals for any of the [signatories] . . . and the adding to or subtracting from the original number of individuals comprising [the band] . . . shall be done only upon the prior written approval and consent of [Arista]."  (Def. Memo at 4 n.3 (quoting the 1975 Agreement, Motion to Dismiss the Complaint, April 3, 2012 ("Mot. to Dismiss") [dkt. no. 24], Ex. B, ¶ 20(a)).)[4]

According to the Complaint, in 1976, Alan Longmuir separated from the band, and Mitchell joined.  (Compl. ¶ 25.) Later that year, after the release of another album, Mitchell separated from the band, and McGlynn joined.  (Compl. ¶ 27.) McGlynn separated from the band in 1977.  (Compl. ¶ 30.)

In 1981, the then-current members of the band—not including Plaintiffs—entered directly into another agreement with Arista (the "1981 Agreement") which granted the band members directly the rights and obligations of ALK Enterprises, Inc. under the 1975 Agreement.  (Def. Memo at 4).  The band disbanded in 1981.  (Compl. ¶ 34; Def. Memo at 4.)  The band continued to perform in various configurations until 1985. (Compl. ¶ 34; Def. Memo at 4.)  Plaintiffs Mitchell and McGlynn

---

[4]     Defendants attach as Exhibits A and B to their Motion to Dismiss the Bell Agreement and the 1975 Agreement, respectively. Plaintiffs reference both of these contracts in their Complaint and do not object to their use in the determination of this motion.  (Pl. Opp. at 6 n.3.)

appeared in several of these performances and at least one studio recording.  (Compl. ¶¶ 34, 35; Def. Memo at 4.)

## II. Plaintiffs' Agreements

Plaintiffs base their claims on implied and/or oral agreements they allege were made with various members of the Rollers and Arista.  Plaintiff Clark, who separated from the band in 1973, was a signatory to the Bell Agreement but also claims to have made a general oral and/or implied agreement in 1972 with the then-current members of the band that "all monies generated from their participation in the band, including royalties received from recordings in which they were involved as performers, would be divided evenly among them."  (Compl. ¶ 20.)  Clark does not claim to have made any oral or implied agreements with Arista under the 1975 Agreement.

Plaintiffs Mitchell and McGlynn each joined the band after the 1975 Agreement was signed, and each claims to have made oral and/or implied agreements with the Rollers and Arista under the 1975 Agreement.  The Complaint alleges that in April 1976, "with Arista's knowledge and consent, Alan Longmuir [signatory to the 1975 Agreement] separated from [the band], and . . . Ian Mitchell succeeded to Alan Longmuir's rights, and assum[ed] Alan Longmuire's obligations, under the [1975] Agreement from that point in time forward."  (Compl. ¶ 25.)  The Complaint goes on to assert that "Arista agreed and understood

5

that this new member would receive royalties pursuant to the [1975] Agreement." (Id.) Plaintiff Mitchell also alleges that at or about that same time, he entered into a general oral and/or implied agreement with the then-current band members to divide evenly among them "all monies generated from their participation in the band, including royalties received from recordings in which they were involved as performers." (Id.)

In November 1976, Mitchell separated from the band, and "with Arista's knowledge and consent . . . Pat McGlynn joined the group, with Pat McGlynn succeeding to Ian Mitchell's rights, and assuming Ian Mitchell's obligations, under the [1975] Agreement from that point in time forward." (Compl. ¶ 27.) As did Mitchell, McGlynn asserts that "Arista agreed and understood that this new member would receive royalties pursuant to the [1975] Agreement." (Id.) At or about that time, McGlynn similarly asserts he also entered into a general oral and/or implied agreement with the current band members to divide evenly among them "all monies generated from their participation in the band, including royalties received from recordings in which they were involved as performers." (Compl. ¶ 28.)

## DISCUSSION

I.  Standard of Review

In assessing a motion to dismiss under Rule 12(b)(6), a court must accept all non-conclusory factual allegations as

6

true and draw all reasonable inferences in the plaintiff's favor.  Goldstein, 516 F.3d at 56.  To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A pleading that offers "labels and conclusions" or "a formalistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

II.  Plaintiffs' Anticipatory Breach of Contract Claim

    A.  The 1975 Agreement and General Agreements to Share in Royalties

        1.  No Written Agreement Alleged

As an initial matter, Plaintiffs have failed to allege facts that would support the existence of a written agreement for royalties either in general or pursuant to the 1975 Agreement.  Plaintiffs' Complaint is abundant in its references to the general oral and/or implied agreements that Clark, Mitchell, and McGlynn had made with various band members, but it does not allege that any of those agreements was memorialized in

7

a writing.  (Compl. ¶¶ 20, 25, 28.)  Additionally, Plaintiffs Mitchell and McGlynn reference oral and/or implied agreements they had made with various members of the band to assume the rights of departing band members pursuant to the 1975 Agreement with the "knowledge and consent" of Arista.  (Compl. ¶¶ 25, 27.)  Again, the existence of a writing substituting Mitchell and McGlynn into the 1975 Agreement has not been alleged.

      Even taking facts alleged in the Complaint as true, these allegations do not establish a valid writing.  The 1975 Agreement defined "Artist" throughout the contract as the signatories to the contract and "such other individual or individuals who at any given time shall then comprise the group."  (Mot. to Dismiss, Ex. B at ¶ 20).  However, the contract goes on to require that substitution of any signatory member with a new band member "shall be done only upon the prior <u>written approval</u> and consent of" Arista, and those new band members "shall agree <u>in writing</u> to be bound by all the terms and conditions of this Agreement."  (<u>Id.</u> (emphasis added).)  Accordingly, even if Plaintiffs Mitchell and McGlynn had the "knowledge and consent" of Arista confirmed orally, they do not allege that they had Arista's acknowledgement of the substitution in writing and they do not allege that they agreed in writing to be bound by the terms of the 1975 Agreement.  Therefore, Plaintiffs cannot use the 1975 Agreement itself as a

8

basis for a breach of contract claim, and their claims for breach of contract must be analyzed under the laws governing oral agreements.

      2.   <u>Statute of Frauds</u>

        i. New York Statute of Frauds

In a diversity action, a federal court is bound to apply the choice-of-law rule of the forum state in determining which state's laws apply. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). Because this is a diversity action in which the underlying contracts are governed by New York law, and Plaintiffs have not alleged that the oral and/or implied agreements were formed elsewhere, under New York's "center of gravity" approach to choice-of-law analysis in a contract case, New York law applies. <u>See</u> <u>Matter of Allstate Ins. Co. (Stolarz-New Jersey Mfrs. Inc.)</u>, 81 N.Y.2d 219, 226 (1993).

Under New York law, a party may properly move for judgment dismissing one or more causes of action on the ground that the cause of action may not be maintained because of the Statute of Frauds. <u>Anostario v. Vicinanzo</u>, 59 N.Y.2d 662 (1983) (in an action to enforce an alleged oral agreement, the complaint was properly dismissed for failure to comply with the Statute of Frauds where the writings offered by the plaintiff did not sufficiently spell out the terms of the alleged agreement); <u>see also</u> <u>Zeising v. Kelly</u>, 152 F. Supp. 2d 335, 343

(S.D.N.Y. 2001) (federal court applying New York law dismissed a complaint for failure to satisfy the Statute of Frauds).

                ii. N.Y. Statute of Frauds Bars Oral Agreements that Cannot be Completed within One Year

The purpose underlying the Statute of Frauds is the "protection of parties who are sued for alleged promises informally made or to protect the enacting State's courts from perjury and prevent their use as instruments of extortion." <u>Intercontinental Planning, Ltd. v. Daystrom, Inc.</u>, 24 N.Y.2d 372, 385 (1969).  The Statute of Frauds proscribes the enforcement of certain types of oral agreements that would be difficult to verify without a signed writing.  <u>Zeising</u>, 152 F. Supp. at 343.  Under the Statute of Frauds, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, . . . if such agreement, promise or undertaking [b]y its terms is not to be performed within one year from the making thereof . . . ." N.Y. Gen. Obligations Law § 5-701(a)(1).  In narrowly interpreting that provision, courts are to analyze oral agreements to determine if, according to the terms of the agreement, there might be any possible means of performance within one year.  <u>Weisse v. Engelhard Minerals & Chems. Corp.</u>, 571 F.2d 117, 119 (2d Cir. 1978).  Those that are impossible to complete within that time, by their own terms, are unenforceable, <u>D & N Boening, Inc. v.</u>

Kirsch Beverages, Inc., 63 N.Y.2d 449, 454-55 (1984), but where performance is possible within one year, however unlikely that may be, the agreement will not be barred by the Statute of Frauds, Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362, 371 (1998).

Specifically, New York courts have determined that open-ended oral agreements for the payment of royalties, such as the agreements in this case, are subject to the Statue of Frauds under the provision proscribing oral agreements that cannot be completed within one year.  See, e.g., Sirico v. F.G.G. Prods., Inc., 896 N.Y.S.2d 61, 66 (1st Dep't 2010) ("[A]ny agreement to pay royalties extending beyond one year must be in writing to satisfy the statute of frauds"); Grossberg v. Double H. Licensing Corp., 446 N.Y.S.2d 296, 297 (1st Dep't 1982) (under an oral agreement to pay royalties on a record's sales "defendants' liability endured so long as a single record of the [] performance was sold anywhere in the world.  In these circumstances the agreement could not be performed within one year and the statute is applicable").

The manner in which the oral and/or implied agreements are characterized in the Complaint places those agreements squarely within the arena of those rendered void by the Statute of Frauds due to their indefinite completion.  The Complaint alleges that agreements were made for Plaintiffs to share generally in the proceeds of "all monies generated from their

11

participation in the band, including royalties received from recordings in which they were involved as performers." (Compl. ¶¶ 20, 25, 28). The implication in the alleged general promises to share in "all monies generated" by the record sales is that the promise extends for as long as the records generate income. Because no end date was articulated by the parties to this oral agreement, the liability is indefinite, and the Statute of Frauds applies. See In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 419 (S.D.N.Y. 2007). Similarly, the 1975 Agreement—the rights of which Plaintiffs Mitchell and McGlynn allege they orally agreed to assume (Compl. ¶¶ 25, 27)—is silent as to a date at which time the payment of royalties would be terminated. It is due to this indefinite continuing liability that courts have resoundingly held that agreements for royalties must be in writing. See, e.g., Grossberg, 446 N.Y.S.2d at 297.

Further, although an agreement capable of indefinite continuance may not fall within the Statute of Frauds where it can be terminated by either party at any time, Am. Credit Servs., Inc. v. Jay Robinson Chrysler/Plymouth, Inc., 615 N.Y.S.2d 175 (4th Dep't 1994), the types of agreements like those in this case in which one party's continued liability is "wholly dependent upon the act of [a] third party," i.e., those purchasing the records, are held to be unenforceable under the Statute of Frauds, Levine v. Zadro Prods., Inc., 2003 WL

12

21344550, at *4 (S.D.N.Y. 2003) (internal quotes and citation omitted).

### iii. No Exception to the Statute of Frauds Applies

Although Plaintiffs acknowledge the Statute of Frauds problem their claims encounter, they argue that a court may still "enforce a contract that runs afoul of the Statute of Frauds where the refusal to enforce the agreement will result in injustice" and "where there is a negligible risk of perjury or error." (Pl. Opp. at 12 (citing 30 Carmine LLC v. Depierro, 791 N.Y.S.2d 383, 390 (Civ. Ct. N.Y. Cnty. 2005)). Plaintiffs argument that injustice will result in the failure to enforce these oral agreements is that each of Plaintiffs' participation in the band over time is substantial enough to warrant a share in the income generated from their work performed. The underlying motivation for this argument is essentially identical to Plaintiffs' claim for unjust enrichment, discussed infra.

The only case to which Plaintiffs cite in support of this exception, 30 Carmine, held that the Statute of Frauds would not be applied due to the overwhelming parol evidence (including several written documents) that indicated parties in fact had executed a writing that had been lost and at the very least shared an understanding of the terms of the agreement, including that both parties were bound to certain responsibilities. Id. at 390-91. Conversely, Plaintiffs here

13

have only the allegation of their oral agreements and the substance of their work performed—facts that are not sufficient to allege that "there is negligible risk of perjury and error" as required to avoid the application of the strictly adhered to Statute of Frauds.  See, e.g., Lauter v. W & J Sloane, Inc., 417 F. Supp. 252, 258 (S.D.N.Y. 1976).  Another red flag triggered by Plaintiffs' facts is that they have not indicated that any of the oral and/or implied agreements imposed upon them ongoing liabilities to Defendants.  Indeed,

> "New York courts have been especially sensitive to the need for a writing in a case . . . where plaintiffs have allegedly already performed their obligations under the contract . . . and at the same time seek to impose a continuing obligation of performance on the defendants . . . [as] such situations are especially fraught with the dangers of perjury."

City of Yonkers v. Otis Elevator Co., 649 F. Supp. 716, 728 (S.D.N.Y. 1986), aff'd, 844 F.2d 42 (2d Cir. 1988).

Accordingly, the Court finds that the enforcement of Plaintiffs' oral agreements is not necessary to avoid a resulting injustice under New York law, and thus the Statute of Frauds bars those agreements.  Therefore, Plaintiffs' claim for anticipatory breach of contract based on oral and/or implied agreements to share in proceeds of monies generated from the product of their performances or from the royalties due under the 1975 Agreement and any claim for declaratory relief based on that claim are dismissed.

B.  The Bell Agreement

Because the Statute of Frauds bars Plaintiffs' contract claims to rights under any general agreement or under the 1975 Agreement, the only remaining contractual issue to resolve is whether Plaintiff Clark's signing of the Bell Agreement has preserved his rights to any royalties in this matter.  For the reasons discussed herein, Clark's claim for breach of contract pursuant to the Bell Agreement is barred by the statute of limitations and is dismissed.

New York's statute of limitations for breach of contract claims is six years.  C.P.L.R. § 213(2); Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007).  A cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach.  Guilbert, 480 F.3d at 149.  If a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew.  Id. at 150.

Because the royalties agreements in this litigation and the companion litigation filed by Defendants Rollers against Defendant Arista (07-cv-2318) are perpetual and no royalties have yet been paid (Compl. ¶ 37), the issues surrounding the statute of limitations have been complex.[5]  However, in the case

---

[5]  For a discussion of the statute of limitations analysis in the Defendant Rollers' companion case, see Faulkner v. Arista

of Clark's rights under the Bell Agreement, the issues are clearer.

Firstly, Clark does not articulate clearly his rights to royalties under the Bell Agreement and instead seems to be using that signing as a basis for parol evidence to prove the existence of the alleged oral and/or implied agreements. (See, e.g., Pl. Opp. at 11.) Defendants admit that the Bell Agreement in addition to the 1975 Agreement "form the basis of royalty payments due to the Rollers and therefore the basis of royalties allegedly due to Plaintiffs." (Def. Memo at 12.) To the extent that Clark is asserting his contractual rights under the Bell Agreement as distinct from the oral and/or implied agreements made, the Court finds that the latest time that claim could have accrued was in 1976.

Signed in 1971, the Bell Agreement held that the signatories would be paid royalties on all records sold by the "Company" defined as "Bell Records . . . [or] its successors, assigns and licensees." (Mot. to Dismiss, Ex. A, at 1; Compl. ¶ 18.) Bell Records is not a named defendant in this litigation, and Plaintiffs do not allege in their Complaint that Arista is a "successor[], assign[] or licensee[]" of Bell Records. Defendants state that Bell Records was reorganized

---

Records LLC, 602 F. Supp. 2d 470, 477-81 (S.D.N.Y. 2009) (Batts, J.).

into Arista in the mid-1970s (Def. Memo at 12 n.11); Clark does not allege that Arista assumed the liabilities of Bell Records during that time.  Seemingly supporting the fact that Arista did not automatically assume the liabilities of the defunct Bell Records, the 1975 Agreement held that royalties due to the signatories for records subject to the Bell Agreement sold subsequent to 1975 were to be paid through the 1975 Agreement. (Compl. ¶ 24.)  Because Bell Records ceased selling records in 1976 or earlier, the last royalties that could have been paid by Bell Records was at that time, representing the last possible breach of Clark's contract.  Therefore, Clark's statute of limitations for a claim under the Bell Agreement expired at the latest in 1982.

Even under the continuing obligation theory, a breach of contract claim would be limited to the six-year period before the lawsuit was filed, meaning, in this case, to any royalties paid pursuant to the Bell Agreement after October 28, 2004. See, e.g., Beller v. William Penn Life Ins. Co., 778 N.Y.S.2d 82, 85-86 (2d Dep't 2004).  Plaintiffs admit that recovery is limited to this time period in their opposition brief.  (Pl. Opp. at 3 n.1 (asserting their claim to any future royalties paid by Arista, "[o]r any sums paid from Arista to the Faulkner Defendants from October 28, 2004 to the filing of the Complaint, the applicable six year Statute of Limitations period, which it

appears there have been none").) Because no payments will be made in the future by Arista pursuant to the Bell Agreement, as discussed above, Clark has no valid claim to royalties due under that agreement. Accordingly, Plaintiff Clark's breach of contract claim, to the extent that he bases one on the Bell Agreement, is dismissed.

### III. Plaintiffs' Unjust Enrichment Claim

Plaintiffs also claim recovery under an equitable theory of unjust enrichment. (Compl. ¶¶ 59-61.) This claim is based on the allegation that certain royalties that will be paid to the Rollers Defendants will be partly "attributable to the efforts, skill and/or abilities of the Plaintiffs." (Id. ¶ 60.)

The term "unjust enrichment" does not signify a single well-defined cause of action. An action for unjust enrichment is a claim in equity that the result or effect of a failure to make restitution of or for benefits received under the circumstances give rise to a legal or equitable obligation to account for the benefits. See Marcraft Recreation Corp. v. Frances Devlin Co., Inc., 459 F. Supp. 195 (S.D.N.Y. 1978). Although this claim is based on equitable principles, a claim for unjust enrichment will be dismissed if it is duplicative of another claim, including one for breach of contract. See

Bouchard Transp. Co., Inc. v. N.Y. Islanders Hockey Club, LP, 836 N.Y.S.2d 654, 655 (2d Dep't 2007).

Plaintiffs fail to identify in any meaningful way how the basis for their unjust enrichment claim for a share in royalties payments does not wholly overlap with their claim for royalties pursuant to the oral agreements.  Plaintiffs attempt to bolster their unjust enrichment claim by detailing the extent of each of the Plaintiff's musical contributions to the group. (Compl. ¶¶ 15, 21, 27, 29, 30, 34; Pl. Opp. at 2 ("Plaintiffs . . . were not salaried musicians and were, instead, full band members entitled to all the rights and privileges to which all other band members were entitled and enjoyed.").)  However, the extent of Plaintiffs' participation in the band is precisely the alleged quasi-contractual basis for the band's oral and/or implied agreements to share in the proceeds of any royalties paid.  (Compl. ¶¶ 20, 25, 28.)  When Plaintiffs' argument is boiled down to its simplest terms, the existing obligation of Arista to the Rollers to pay royalties "under the [1975] Agreement and/or any applicable agreement" is the only basis of Plaintiffs' demand for recovery.  (Compl. ¶ 60 (emphasis added)); Bettan v. Geico Gen. Ins. Co., 745 N.Y.S.2d 545, 546 (2d Dep't 2002) ("[B]ecause both causes of action seek damages for events arising from the same subject matter that is governed by an enforceable contract . . . the cause of action to recover

19

for unjust enrichment should be dismissed."); see also Zeising, 152 F. Supp. 2d at 345 (S.D.N.Y. 2001) (dismissing unjust enrichment and quantum meruit claims because they "depend upon proof of an unenforceable contract").

Because Plaintiffs have failed to allege facts establishing a basis for a claim of unjust enrichment independent from those supporting the breach of contract claim, Plaintiffs' claim for unjust enrichment and any claim for declaratory relief based on that claim are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint in its entirety [dkt. no. 24] is GRANTED.

SO ORDERED.

Dated:   New York, New York
         January 14, 2013

                                        Loretta A. Preska
                                    UNITED STATES DISTRICT JUDGE